UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORA CAROL LAWSON,

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

                                           /

Case No. 1:11-cv-533
Hon. Hugh W. Brenneman, Jr.

**OPINION**

       Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

       Plaintiff was born on August 20, 1964 (AR 104, 124).[1] Plaintiff alleged a disability onset date of November 16, 2004 (AR 104). She has completed 9th grade (AR 117), and has had previous employment as a grinder/foundry laborer, pet groomer, supervisor and secretary (AR 120, 128, 530-31, 536-37, 570). Plaintiff identified her disabling conditions as migraines, back and arm injury, joint pain, depression, knee pain, and problems with her hips and shoulders (AR 127). Plaintiff stated that she cannot move due to severe pain, that she has a lot of headaches and migraine headaches when she moves, that she has a migraine "about every other day," that she wakes up with headaches "every day," that she cannot sit or stand for long periods, and that she cannot concentrate (AR 128). The ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying

---

[1] Citations to the administrative record will be referenced as (AR "page #").

benefits on December 12, 2008 (AR 20-34). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.[2]

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful

---

[2] The court notes while the ALJ's decision was issued on December 12, 2008, the Appeals Council did not deny plaintiff's request for review until March 17, 2011 (AR 5).

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of November 16, 2004 and met the insured status requirements of the Social Security Act through December 31, 2009 (AR 22). Second, the ALJ found that plaintiff had severe impairments of a depressive disorder, right carpal tunnel syndrome, and unspecified polyarthralgias, and myalgias (AR 22). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 25-27). In this regard, the ALJ reviewed Listing 12.04 (affective disorders) (AR 25-27). The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b) as follows:

> [S]he can lift and/or carry up to twenty pounds occasionally, and up to ten pounds frequently, stand and/or walk for at least two hours total each in an eight-hour workday, sit for at least six hours total in an eight-hour workday, use her right upper extremity to frequently handle, finger, feel, push, and pull, and to reach overhead and in all directions continuously, she has no limitations in the use of her left upper extremity, she can continuously use her lower extremities for operation of foot controls, she can occasionally climb ramps and stairs, stoop, kneel, and crawl, never climb ladders or scaffolds, and never balance or crouch, she can have only occasional exposure to humidity, wetness, and have occasional exposure to vibration with her right upper extremity, but can have no exposure to unprotected heights or dangerous moving machinery, dust, odors, fumes, pulmonary irritants or temperature extremes, and she is limited to doing jobs that require her to understand, remember, and carry out only simple repetitive tasks, and that involve only one or two steps to properly perform.

(AR 27). The ALJ also found that plaintiff was unable to perform her past relevant work of: grinder/foundry laborer (unskilled, very heavy work); supervisor (semi-skilled, sedentary work); and as a secretary (semi-skilled, sedentary work) (AR 32).

At the fifth step, the ALJ determined that plaintiff could perform the following unskilled, light jobs in the regional economy (defined as the State of Michigan): manufacturing jobs such as assembler, sorter, grader, fabricator and packager (40,000); and, clerical jobs such as general office clerk, file clerk, photo copy machine tender and medical record scanner (48,000) (AR 33). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from November 16, 2004 through December 12, 2008 (the date of the decision) (AR 34).

### III. ANALYSIS

Plaintiff has raised three issues in her appeal.

**A.  The ALJ's decision was not based on substantial evidence because he failed to give proper weight to the findings and opinion of plaintiff's treating psychologist and physician.**

**1.  Legal standard**

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals

most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2).

An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

### 2. Loren Wise, M.D.

Dr. Wise gave a statement on September 12, 2008 (AR 497). The doctor had treated plaintiff for over three years for severe depression, anxiety, chronic pain issues, agoraphobia, chronic headaches and migraine headaches (AR 497). During counsel's interview with Dr. Wise,

counsel advised the doctor that records from plaintiff's psychologist, Patricia Murray, Ed. D., included diagnoses for pain disorder associated with both psychological factors and general medical condition, dysthymia and panic disorder (AR 497). When asked whether these diagnoses were consistent with his experience, Dr. Wise stated that he did not have any of Dr. Murray's notes, but based upon counsel's representation he would agree with those diagnoses (AR 497). Dr. Wise stated that plaintiff was physically able to perform sedentary work, but she would likely have frequent absences due to her mild headaches (which occurred several times a week) and severe headaches (which occurred at least once a week) (AR 498). In addition, plaintiff's use of Xanax three times a day could cause sedation, so she should avoid "any position where she may endanger herself and others because of over sedation" (AR 498). From a "physical point of view," Dr. Wise felt that plaintiff could perform sedentary work with no bending, twisting and turning, no significant lifting or carrying, no frequent use of the upper extremities, which involved unskilled, simple routine tasks, such as a receptionist or an inspector on a small parts assembly line (AR 498).

However, when asked to evaluate plaintiff "from a psychological point of view," the doctor stated that he has known plaintiff for approximately three years, and felt that there was "no way" that she could hold down a job which involved working 40 hours, five days a week (AR 498). The doctor noted that plaintiff has had some improvement in her depression, that he has prescribed various anti-depressants and that she suffered from some medication side effects (AR 498). Despite the medication, plaintiff's anxiety continued to be problematic and not controlled (AR 498). The doctor specifically recalled seeing one of plaintiff's panic attacks, which he described as "quite severe" (AR 499).

The ALJ gave "greatly reduced weight" to Dr. Wise's opinions, stating in pertinent part as follows:

> Dr. Wise provided a statement on September 12, 2008 in which he stated that he was the claimant's primary care doctor, and was not a psychologist. He also indicated that from a physical standpoint the claimant was capable of performing sedentary work, but would not be able to maintain full time employment due to absences attributable to her headaches. He agreed with the psychological diagnoses of Dr. Murray, and indicated that from a psychological standpoint the claimant could not perform full-time work, and would always have problems with anxiety and depression (Exhibit 26F). That statement by Dr. Wise has been given greatly reduced weight. Dr. Wise frankly admitted his own lack of expertise in his statement. He acknowledged that he was not a psychologist, but rather was a family practitioner. He has no basis for rendering reliable opinions on psychological matters, yet he agreed with the diagnoses made by psychologist Murray. Even more surprising was the fact that he had not reviewed or even seen the notes of Dr. Murray yet stated "but based on what you [the claimant's representative] are telling me I would agree that these diagnoses would be applicable to Ms. Lawson, and I would agree with her assessment." (Exhibit 26F, p. 4). Before any medical professional renders an opinion concerning statements by other doctors that he agrees are not within his area of expertise, it would seem elementary that he review that other doctor's notes and records to have a full understanding of the doctor actually concluded and observed, and what she was told by the claimant. Dr. Wise did not do that here, and conceded that he did not. Not only that, the doctor further conceded that he spent a mere 15 minutes at a time with the claimant on each of her office visits. That is not much time to become familiar with her myriad of claimed physical problems much less to discuss the mental problems he is admittedly unqualified to treat. In addition, Dr. Wise stated that the claimant's headaches were not getting any better, despite the fact that by all other accounts, including the claimant's herself, her headaches were getting significantly better over time with treatment.

(AR 31).

As an initial matter, plaintiff contends that the ALJ's decision did not include a review or summary of Dr. Wise's treatment. While the ALJ's decision does not address Dr. Wise's treatment in any detail, this is not a basis, in and of itself, to find reversible error. It is unnecessary for the ALJ to address every piece of medical evidence. *See Heston*, 245 F.3d at 534-35 (ALJ's failure to discuss a doctor's report was harmless error because the reviewing court should consider

all of the evidence in the record). Nevertheless, the court finds that the ALJ failed to give good reasons for discounting Wise's opinions on the basis that the doctor was not a psychologist.

Dr. Wise began treating plaintiff for depression since at least February 15, 2006 (AR 438). The doctor treated plaintiff's depression and monitored her medications throughout 2007 and 2008. On January 17, 2007, Dr. Wise noted that plaintiff had a history of depression, continued to have problems with sleep, fluctuating levels of energy and concentration, denied feelings of guilt, did not experience suicidal ideation and wanted a referral to a psychiatrist (AR 425). The doctor noted that plaintiff has been on Prozac in the past, but discontinued due to headaches (AR 425). She also needed a refill on Xanax which she used as needed (AR 425). Dr. Wise diagnosed plaintiff with depression with the following treatment:

> For now we will start with Zoloft 50 mg daily. In addition she was referred for counseling. If we continue to have trouble controlling her depression and moods we may consider a referral to psychiatry.

(AR 425).

On February 21, 2007, Dr. Wise noted plaintiff's history of depression, that she stopped taking Zoloft due to possible drug interaction with cold remedies, and that plaintiff did not notice any significant impact on her moods from using the Zoloft (AR 427. The doctor continued the diagnosis of depression with the following treatment:

> Restart Zoloft at 50 mg daily and follow up in approximately two months time. Again she would like to postpone counseling until spring.

(AR 427-28).

On April 18, 2007, Dr. Wise noted plaintiff's history of depression, that she has tolerated Zoloft 50mg well, that her moods have improved, but that lack of energy, concentration

9

and sleep were still problems for her (AR 426). The doctor's treatment plan increased Zoloft to 100 mg with a follow up in one month (AR 426).

On June 5, 2007, Dr. Wise noted that plaintiff had tolerated the increase in Zoloft well, that she denied problems with guilt, sadness, blueness or concentration, and that she was sleeping well but sometimes needed Xanax at night (AR 422). However, her interest was low and energy continued to fluctuate (AR 422). The doctor noted that plaintiff's depression was controlled and continued Zoloft at 100 mg daily (AR 422).

On July 5, 2007, a nurse practitioner working with Dr. Wise noted that plaintiff had "depression with good control," that she had been taking Zoloft 100mg and doing well with that medication, and that Dr. Wise had recently refilled plaintiff's Xanax prescription (AR 421).

On May 13, 2008, Dr. Wise noted that plaintiff had a history of both depression and anxiety, that she was using two Xanax tablets as night and one tablet daily (especially if she had a panic attack), that she was having two panic attacks a day, and that her interest and concentration were diminished (AR 418-19). However, plaintiff denied problems with guilt, energy or sleep, and stated that the Prozac seemed to work better than the Zoloft (AR 418-19). Dr. Wise felt that plaintiff had uncontrolled depression with anxiety (AR 418-19). He developed the following treatment plan:

> Increase Zoloft to 150 mg daily. May continue Xanax at current dose. Follow up in one month to determine progress The patient reports that a lot of her depression comes from the fact that she is not able to work. She is not eager to return to the work force as she feels that she will be "a failure." I did recommend volunteering and she was given the number for Volunteer Services. We will follow up with her in one month to determine if she has actually followed through on this.

(AR 418-19).

The ALJ rejected Dr. Wise's opinions related to plaintiff's mental condition on the ground that the doctor "has no basis for rendering reliable opinions on psychological matters"

10

because "he was not a psychologist, but rather was a family practitioner" (AR 31). The ALJ's rejection of Dr. Wise's opinion is not supported by the record. Dr. Wise was qualified to treat plaintiff's mental problems. The doctor's treatment including prescribing medications to treat plaintiff's depression and anxiety, monitoring those medications, recommending plaintiff to participate in outside activities, and referring her for counseling. While the ALJ faulted Dr. Wise for not being a psychologist, the court notes that Dr. Wise prescribed medication, a treatment option not available to psychologists. *See Walker v. Eyke*, 417 Fed.Appx. 461, 464 (6th Cir. 2011) (in Michigan "[t]he practice of psychology does not include the practice of medicine such as prescribing drugs, performing surgery, or administering electro-convulsive therapy"). Accordingly, this matter shall be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings. On remand, the Commissioner is directed to re-evaluate Dr. Wise's treatment notes and statement as those of a treating source for plaintiff's mental condition.

### 3. Dr. Patricia Murray

Dr. Murray was plaintiff's treating psychologist. She prepared a "mental impairment questionnaire" (sometimes referred to as a mental RFC assessment) (dated August 5, 2008) and gave a statement (dated August 14, 2008) regarding plaintiff's condition (AR 468-77). Dr. Murray diagnosed plaintiff with pain disorder associated with both psychological factors and general medical condition, dysthymia and a panic disorder with agoraphobia (AR 468). The doctor stated plaintiff would be unable to complete a normal workday and workweek without interruption from psychologically-based symptoms arising from her anxiety and pain disorder (AR 469). Dr. Murray did not think that plaintiff was either a malingerer or "hysterical" (AR 469). In evaluating the consistency of plaintiff's complaints, the doctor felt that plaintiff was accurately describing her panic

attacks (AR 470) The doctor noted that plaintiff had a panic attack in her office and that she had to go outside to find plaintiff (AR 470). Dr. Murray felt that the panic attack was real, noting that plaintiff was breathing "fairly heavily," had a flushed face and was trembling (AR 470). The doctor stated that plaintiff could not perform simple, unskilled work activity such as small parts assembly or small parts packaging, observing:

> She would not stay in the place where she needed to work[,] she would be gone. She almost left our office when she had a panic attack.

(AR 470).

In the mental RFC assessment, Dr. Murray noted, among other things, that plaintiff had "no useful ability to function" in the following work related activities: work in coordination with or proximity to others without being unduly distracted; and perform at a consistent pace without an unreasonable number and length of rest periods (AR 474). The doctor also found that plaintiff was "unable to meet the competitive standards" in the following work related activities: maintain attentions and be punctual; maintain ordinary routine without special supervision; complete a normal workday and workweek without interruptions from psychologically based symptoms; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; and, deal with normal work stress (AR 474).

The ALJ identified plaintiff's depressive disorder as a severe impairment (AR 22-23). However, the ALJ concluded that plaintiff's anxiety was a non-severe impairment:

> The claimant was evaluated by Patricia Murray, Psy. D. [sic] in May 2007, at which time she concluded that the claimant had a pain disorder associated with both psychological factors, and a general medical condition (307.89) (Exhibits 19F, p. 10; 24 F, p. 1). She did not diagnose the claimant with an anxiety-related disorder at that time, or at any time during which she saw the claimant for counseling in the months following that evaluation (Exhibit 19F). Dr. Murray's treatment notes don't really describe anything about panic attacks until she saw the claimant just prior to

12

> giving her statement, and when she prepared a mental residual functional capacity assessment at the request of the claimant's attorney (Exhibit 24F). In addition, her treatment notes in 2007 are very sparse (Exhibit 19F). When Dr. Murray evaluated the claimant in May 2007 she concluded that the claimant had a GAF score of 55, indicating moderate psychological symptoms, consistent with doing simple work (Exhibit 19F).

(AR 24).

The ALJ further evaluated Dr. Murray's statement, records and mental RFC assessment, giving the doctor's opinions greatly reduced weight:

> Dr. Murray also provided a statement on August 12, 2008 (Exhibit 24F) in support of the claimant's application herein where she indicated that she had seen the claimant intermittently on a total of eight different occasions. She concluded that the claimant would not be able to work at even a simple job because her panic attacks would compel her to leave her workplace at unpredictable times. The doctor also provided a psychological residual functional capacity assessment in which she indicated that the claimant had significant depression, and anxiety particularly around other people, and that those conditions resulted in marked limitations in activities of daily living, in social functioning, and in maintaining concentration, persistence or pace. She also concluded that the claimant had an anxiety-related disorder, and complete inability to function independently outside of the area of her home. Those conclusions are given greatly reduced weight by the undersigned. Dr. Murray's treatment notes describe nothing about the diagnosis or existence of panic attacks until she saw the claimant just prior to giving her statement. Further, her treatment notes – which cover only 4 meetings, are very sparse, containing few details concerning her impressions about the nature and severity of claimant's alleged psychological difficulties (Exhibits 19F; 23F). When Dr. Murray evaluated the claimant in May 2007 she concluded that the claimant had a GAF score of 55, indicating moderate psychological symptoms that were consistent with doing simple work (Exhibit 19F). Her statements on the eve of the hearing that the claimant had marked limitations in all of the areas of functioning noted above are not consistent with the prior evaluation, and are not consistent with the claimant's longitudinal record.

(AR 31-32).

As an initial matter, Dr. Murray's progress notes reflect that she saw plaintiff eight times (as opposed to four times as identified by the ALJ): May 9, 2007; May 16, 2007; May 23, 2007; June 13, 2007; August 1, 2007; May 2, 2008; July 2, 2008; and, August 5, 2008 (AR 371-90,

13

464- 67). Nevertheless, the severe symptoms referenced in Dr. Murray's statement and mental RFC assessment are not reflected in the doctor's progress notes. The ALJ articulated good reasons for giving reduced weight to Dr. Murray's statement and mental assessment. Accordingly, the ALJ did not err in evaluating Dr. Murray.

> **B. The ALJ's decision is not supported by substantial evidence because he failed to properly follow 20 C.F.R. § 404.1529 and applicable case law in assessing Ms. Lawson's credibility.**[3]

Plaintiff contends that she suffered from severe, chronic, disabling pain. When evaluating a claimant's statements of subjective pain, the ALJ is required to determine the actual intensity and persistence of the claimant's symptoms and how these symptoms limit the claimant's ability to work. *Allen v. Commissioner of Social Security*, 561 F.3d 646, 652 (6th Cir. 2009), citing 20 C.F.R. § 404.1529(c)(1) ("When the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain, we must then evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity for work.") and § 404.1529(b) ("The finding that your impairment(s) could reasonably be expected to produce your pain or other symptoms does not involve a determination as to the intensity, persistence, or functionally limiting effects of your symptoms.").

While it is well-settled that pain may be so severe that it constitutes a disability, a disability cannot be established by subjective complaints of pain alone. "An individual's statement as to pain or other symptoms shall not *alone* be conclusive evidence of disability." *Cohen*, 964 F.2d

---

[3] The court notes that plaintiff's cites 20 C.F.R. § 416.929 (the regulation applicable to a claim for Supplemental Security Income) rather than 20 C.F.R. § 404.1529 (the regulation applicable to DIB). Because plaintiff's claim involves DIB, the court will review plaintiff's claim under the latter regulation.

14

at 529, quoting 42 U.S.C. § 423(d)(5)(A) (emphasis added). Rather, objective medical evidence that confirms the existence of pain is required. *Shavers v. Secretary of Health and Human Services*, 839 F.2d 232, 234-235 (6th Cir.1987). *See* 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption. Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work.").

In addition, the Commissioner considers other evidence, including information about a claimant's symptoms. *See* 20 C.F.R. § 404.1529(c)(2).

Factors relevant to your symptoms, such as pain, which we will consider include:

(i) Your daily activities;

(ii) The location, duration, frequency, and intensity of your pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

*Id.* at § 404.1529(c)(3).

Credibility determinations are inherent in an ALJ's review of claims arising from disabling pain. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

Here, the ALJ evaluated plaintiff's symptoms and credibility as follows:

> The claimant testified at her hearing that she was married, had no dependents, and was not working. Her husband was the vice-president of Cooper Foundry. She had completed the ninth grade in school. She previously worked as a laborer in a factory where she had to lift up to 100 pounds, and also worked as a supervisor and a secretary. When she was a secretary she worked less than 30 hours a week. At the last two jobs (supervisor, secretary) she was sitting most of the day, and did not lift much. She was working as a secretary, when she had to take 30 days off work due to medical problems. When she returned to work, she was fired. She filed a worker's compensation claim, but did not file for unemployment benefits. After that, in 2004, she did some dog grooming for a short period of time.

16

> She testified that she was not able to work because she had migraines, pain throughout her body, and anxiety. Her pain was primarily in her back, shoulders, and hips. She had migraines for years, including during the time she was working as a secretary, and as a supervisor. In 2004, she had 3 to 4 headaches a month that lasted for about 48 hours each, and required her to go to bed in a dark room. They were often accompanied by vomiting. Her headaches were better at the time of the hearing because they did not last as long but she got them once a week. She was taking medications that included Imitrex, Calan, and Axert, however, she had stopped taking some medicine because it was not helping. Imitrex caused side effects such as muscle tension, and pain. Her back, hip and shoulder pain had never been evaluated to determine the cause.
>
> She also had panic attacks once or twice a day, resulting in shortness of breath, chest pain and tightness, followed by anger and crying. Those attacks had been occurring at that rate for about a year. She did not know what triggered those attacks at home, but being around other people often triggered them. When they occurred, they lasted about 15 minutes at a time, and she was exhausted after each attack. Even a doctor's appointment could trigger a panic attack. If she were working and had a panic attack, she would have to leave the work place until she calmed down, and that would take more than 15 minutes. She found that the aftermath of a panic attack could last for an hour. She took Xanax and Prozac for treatment of those attacks. She also had crying spells once or twice a month, had problems with concentration, did not sleep well, and napped for about two hours every afternoon. She did not believe that she was depressed, however. She stayed in her pajamas every day, did not visit friends, and talked to her adult children weekly or less. She was able to do dusting and laundry, and her husband did the vacuuming and other housework. She spent much of the day laying in bed or laying in front of the television. She also had carpal tunnel syndrome in her wrists, and used a C-PAP machine to treat sleep apnea, which she did not think helped relieve any of her symptoms.
>
> She was ambidextrous, could carry a gallon of milk, could stand for 15 to 20 minutes, and could walk for 200 feet.
>
> In watching the claimant testify, the undersigned observed that she used no assistive device, was able to sit comfortably throughout the hearing, maintained eye contact, responded appropriately to questions, had good hygiene, had quite a good memory, and was quite defensive in her answers.

(AR 28). Based upon this review, the ALJ concluded that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements

concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent the symptoms were inconsistent with the RFC determination (AR 29).

In this instance, the court finds that a compelling reason to disturb the ALJ's credibility determination, because that determination was based upon an improper evaluation of Dr. Wise's treatment notes and statement. By taking the position that Dr. Wise could not "render[] reliable opinions on psychological matters," the ALJ effectively eliminated the doctor's treatment from the credibility determination. For example, at one point Dr. Wise found that plaintiff's depression with anxiety was "uncontrolled" by the prescribed medication (AR 418-19). Such a finding would be consistent with some of plaintiff's symptoms. Accordingly, the ALJ's decision will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should re-evaluate plaintiff's credibility in light of Dr. Wise's treatment notes and statement.

### C. The ALJ's findings on plaintiff's RFC and his finding that plaintiff can perform jobs existing in significant numbers in the regional economy are not supported by substantial evidence.

Plaintiff contends that the ALJ failed to pose a proper hypothetical question. An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Services.*, 927

F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Services.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals"). Because the purpose of the hypothetical question is to elicit testimony regarding a claimant's ability to perform other substantial gainful activity that exists in the national economy, the question does not need to include a listing of the claimant's medical diagnosis. "[A] hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions." *Webb*, 368 F.3d at 632.

Here, the ALJ's hypothetical question posed to the VE included the limitations as set forth in the RFC. This hypothetical question was presented in a format typically used at Social Security hearings. Nevertheless, the court concludes that the ALJ's hypothetical question was flawed because it was based upon an improper evaluation of Dr. Wise's opinions. Accordingly, on remand, the Commissioner should re-evaluate the vocational evidence in light of Dr. Wise's treatment notes and statements.[4]

### IV. CONCLUSION

The ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings. On remand, the Commissioner is directed to re-evaluate Dr. Wise's

---

[4] The court notes that plaintiff's statement of errors raises three sub-issues related to the RFC and hypothetical question. First, the ALJ failed to perform a function-by-function analysis as required by 20 C.F.R. § 404.1520a, SSR 98-6 and SSR 85-15. Plaintiff's Brief at p. iii. Second, the hypothetical question given to the VE failed to include plaintiff's well-documented impairments of record. *Id.* Third, based on the VE's testimony, the ALJ should have found that plaintiff is disabled. *Id.* Plaintiff, however, fails to develop these arguments. *Id.* at pp. 18-19. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, the court deems these arguments waived.

19

treatment notes and statement as those of a treating source for plaintiff's mental condition, plaintiff's credibility and the vocational evidence. A judgment consistent with this opinion shall be issued forthwith.

Dated: September 24, 2012                                         /s/ Hugh W. Brenneman, Jr.
                                                                  HUGH W. BRENNEMAN, JR.
                                                                  United States Magistrate Judge